# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 15-60088

United States Court of Appeals
Fifth Circuit

**FILED**

March 4, 2016

Lyle W. Cayce
Clerk

XADIMUL RASULU SAMBA,

Petitioner

v.

LORETTA LYNCH, U. S. ATTORNEY GENERAL,

Respondent

Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A074-682-758

Before BARKSDALE, CLEMENT, and HAYNES, Circuit Judges.

PER CURIAM:*

Proceeding *pro se*, petitioner Xadimul Rasulu Samba, a native and citizen of Burundi, petitions for review of a decision of the Board of Immigration Appeals (BIA), which held that he was subject to removal and ineligible for asylum or withholding of removal. We DENY Samba's petition in part and DISMISS it in part for lack of jurisdiction.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-60088

## I. Background

Approximately twenty years ago, Samba was granted asylum based on past persecution and fear of future persecution, and he subsequently received lawful permanent resident status in 2004.  On March 25, 2008, Samba pleaded guilty to nine counts of fraud and false statements in the preparation of individual income tax returns, in violation of 26 U.S.C. § 7206(2).  The district court sentenced him to a two-year term of probation and ordered him to pay an assessment and $151,907.00 in restitution.

After a trip to Senegal, Samba applied for readmission to the United States as a lawful permanent resident in March 2012.  He subsequently received a Notice to Appear that charged that Samba was subject to removal under 8 U.S.C. § 1182(a)(2)(A)(i)(I) because he had been convicted of a crime involving moral turpitude.

At the resulting hearing before the immigration judge, Samba—through his counsel—admitted the allegations in the Notice to Appear, thereby conceding that his tax fraud conviction was a crime involving moral turpitude.  Accordingly, the immigration judge found Samba was subject to removal and allowed Samba to file applications for relief.  Samba then sought relief from removal in the form of applications for asylum and withholding of removal.[1]  The immigration judge conducted a hearing on the applications on August 19, 2014, and upon hearing the evidence, denied them on the basis that Samba

---

[1] Samba also sought relief through (1) an application for a waiver of inadmissibility under 8 U.S.C. § 1182(h) based on extreme hardship to his U.S.-citizen children; and (2) an application for deferral of removal under the Convention Against Torture.  The immigration judge denied these applications, and the BIA affirmed these denials.  Samba listed the denial of these two applications as issues in his petition for review, but did not brief any argument challenging these denials.  Accordingly, Samba has abandoned these issues, and we need not consider them.  *See Soadjede v. Ashcroft*, 324 F.3d 830, 833 (5th Cir. 2003); *Yohey v. Collins*, 985 F.2d 222, 225 (5th Cir. 1993).

No. 15-60088

was previously convicted of a particularly serious crime and was therefore ineligible for his requested relief.

Samba appealed to the BIA. He maintained that removal was improper because the offense for which he was convicted did not constitute a crime involving moral turpitude. He further argued that the immigration judge erroneously determined he was ineligible for relief from removal. The BIA rejected these arguments, noting that Samba had conceded removability before the immigration judge and the immigration judge did not err in determining that the offense in question was a particularly serious crime. Samba timely petitioned this court for review of the BIA's decision.

## II. Standard of Review

Although we generally "review only the decision of the BIA, not that of the immigration judge[,]" we will examine the decision of the immigration judge "to the extent that it affects the BIA's decision." *Beltran-Resendez v. I.N.S.*, 207 F.3d 284, 286 (5th Cir. 2000). We review legal and constitutional issues de novo. *Enriquez-Gutierrez v. Holder*, 612 F.3d 400, 406 (5th Cir. 2010).

## III. Discussion

A. Removability

An alien is subject to removal if he commits a crime involving moral turpitude. § 1182(a)(2)(A)(i)(I). Samba maintains that he was not removable because his tax offense does not constitute a crime involving moral turpitude. On April 2, 2014, in a hearing before the immigration judge, Samba's counsel conceded to the charge of being "an alien who has been convicted of or who admits having committed or who admits committing acts which constitute the essential elements of a crime involving moral turpitude," thus conceding Samba's removability.

No. 15-60088

"If the respondent admits the factual allegations and admits his or her removability under the charges and the immigration judge is satisfied that no issues of law or fact remain, the immigration judge may determine that removability as charged has been established by the admissions of the respondent." 8 C.F.R. § 1240.10(c). "Absent egregious circumstances, a distinct and formal admission made before, during, or even after a proceeding by an attorney acting in his professional capacity binds his client as a judicial admission." *Matter of Velasquez*, 19 I. & N. Dec. 377, 382 (B.I.A. 1986). The BIA held that the record did not reflect that Samba's counsel's concessions were the result of unreasonable professional judgment, and accordingly Samba was bound by them. In his petition to this court, Samba has not set forth any circumstances that would warrant relief from his counsel's admissions before the immigration judge. Accordingly, the BIA did not err in its determination that Samba was bound by the concessions of his counsel.[2] *See, e.g., Zhong Qin Yang v. Holder*, 570 F. App'x 381, 382–83 (5th Cir. 2014) (discussing the effect of counsel's concessions before the immigration judge).

B. Asylum and Withholding of Removal

An alien subject to removal may obtain asylum if he is a refugee that suffered past persecution, or fears future persecution, due to "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1158(b)(1). Additionally, removal of an alien must be withheld "if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C.

---

[2] Because the BIA concluded that Samba was bound by his counsel's concessions regarding inadmissibility, we need not consider Samba's estoppel-like argument that because the government allowed him to leave the country, the immigration judge could not find him inadmissible.

§ 1231(b)(3)(A).  An alien cannot receive asylum or withholding of removal, however, if "the alien, having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of the United States."  § 1158(b)(2)(A)(ii) (asylum); *see also* § 1231(b)(3)(B)(ii) (withholding of removal).  The immigration judge denied Samba's applications for asylum and withholding of removal on the ground that Samba's tax offense was a particularly serious crime that made him ineligible for the requested relief.[3] The BIA agreed with the immigration judge's decision, finding no clear error. In his petition for review, Samba maintains that (1) his tax offense was not a particularly serious crime and (2) there needed to be a separate finding that he was dangerous to the community to be ineligible for his requested relief under the language of the statutes.

We first address our jurisdiction to hear these issues.  Because Samba is subject to removal based on a conviction for a crime involving moral turpitude, we have jurisdiction to consider only constitutional questions and questions of law raised in a petition for review.  8 U.S.C. § 1252(a)(2)(C), (D); *see Brieva-Perez v. Gonzales*, 482 F.3d 356, 359 (5th Cir. 2007).  In his first issue, Samba maintains that the immigration judge placed too little weight on the length of his sentence and the assistance he provided to federal agencies in determining

---

[3] For the purposes of asylum, "an alien who has been convicted of an aggravated felony shall be considered to have been convicted of a particularly serious crime." § 1158(b)(2)(B)(i).  The immigration judge determined that Samba's tax offense was an aggravated felony, and therefore a particularly serious crime, such that he was ineligible for asylum.  He also determined that the nature of the offense—regardless of whether it was classified as an aggravated felony—qualified the offense as a particularly serious crime that prevented Samba from obtaining withholding of removal.  The BIA determined that it need not reach the aggravated felony determination, because by affirming the immigration judge's decision that the nature of the offense made it a particularly serious crime, Samba was ineligible for either relief.  Because we review the BIA's decision, and because the same factor-based analysis applies to both statutes, *see Mejia v. I.N.S.*, 121 F.3d 704, 1997 WL 450111, at *2–3 (5th Cir. 1997) (unpublished), we need not determine whether Samba's tax offense was an aggravated felony.

that the offense was a particularly serious crime.   We have previously determined that such a claim, "which amount[s] to an argument that the immigration judge 'abused [his] discretion in weighing the multiple desiderata made relevant by the [BIA's] definition of a particularly serious crime,' do[es] not present questions of law and therefore [is] not reviewable under section 1252(a)(2)(D)." *Solorzano-Moreno v. Mukasey*, 296 F. App'x 391, 394 (5th Cir. 2008)[4] (third alteration in original) (quoting *Petrov v. Gonzales*, 464 F.3d 800, 802 (7th Cir. 2006)); *see also Sung v. Keisler*, 505 F.3d 372, 377 (5th Cir. 2007) (holding that the argument "that the [immigration judge] did not consider all of the relevant factors in determining that his children would not suffer the requisite hardship" was not a question of law under § 1252(a)(2)(D)).

To the extent that the first issue challenges whether the immigration judge applied the proper legal standard when determining that Samba committed a particularly serious offense, we have jurisdiction to review such a claim. *See Hakim v. Holder*, 628 F.3d 151, 154–55, 155 n.1 (5th Cir. 2010).[5] On the merits, we conclude that the BIA applied the correct standard in determining whether Samba's tax offense was a particularly serious crime. Contrary to Samba's contention, the BIA did examine the elements of the offense and found no clear error in the immigration judge's finding that the conviction presented severe implications because Samba's conduct obstructed

---

[4] Although *Solorzano-Moreno* is not "controlling precedent," it "may be [cited as] persuasive authority." *Ballard v. Burton*, 444 F.3d 391, 401 n.7 (5th Cir. 2006) (citing 5th Cir. R. 47.5.4).

[5] We need not address the government's argument that the determination that Samba's offense was a particularly serious crime is a discretionary decision, because § 1252(a)(2)(D) expressly states that we still have jurisdiction to review questions of law, irrespective of whether the decision was discretionary.  § 1252(a)(2)(D); *see also Ayanbadejo v. Chertoff*, 517 F.3d 273, 277 n.11 (5th Cir. 2008) ("Under § 1252(a)(2)(D), 'constitutional claims or questions of law' related to any claim for relief under § 1252(a)(2)(B) are exempted from the category of non-reviewable decisions left to the discretion of the Attorney General.").

an important government function through fraudulent means. *See In re N-A-M-*, 24 I. & N. Dec. 336, 342 (B.I.A. 2007) ("If the elements of the offense do not potentially bring the crime into a category of particularly serious crimes, the individual facts and circumstances of the offense are of no consequence, and the alien would not be barred from a grant of withholding of removal."). The BIA then examined facts relevant to the factors set forth in *Matter of Frentescu*, 18 I. & N. Dec. 244, 247 (B.I.A. 1982), *superseded in part by statute as recognized in In re N-A-M-,* 24 I. & N. Dec. at 339–40. Because the BIA performed the "case specific analysis" that we require, *see Hakim*, 628 F.3d at 155, we reject Samba's argument that the BIA applied the wrong standard. Accordingly, we deny Samba's petition as it relates to this issue.

We would usually also have jurisdiction under § 1252(a)(2)(D) to review Samba's contention that there needed to be a separate determination that he was a danger to the community to find him ineligible for asylum and withholding of removal because this, too, is a question of law. *See id.* at 154–55, 155 n.1. However, we lack jurisdiction over this issue for another reason—Samba failed to exhaust this argument as required by § 1252(d)(1). He neither raised it before the BIA, nor did the BIA address it on the merits. *See Omari v. Holder*, 562 F.3d 314, 318–19 (5th Cir. 2009); *Lopez-Dubon v. Holder*, 609 F.3d 642, 644 (5th Cir. 2010). Accordingly, we lack jurisdiction to hear Samba's contention that a separate finding of dangerousness is required under § 1158(b)(2)(A)(ii) and § 1231(b)(3)(B)(ii).`

No. 15-60088

For these reasons, the petition is DENIED in part and DISMISSED in part.[6]

---

[6] Because Samba has not demonstrated that his interests outweigh the public's right to access judicial records, we deny Samba's motion to seal.  *See United States v. Chandler*, 732 F.3d 434, 440 n.2 (5th Cir. 2013).  We deny Samba's motion to appoint counsel because the case does not present the type of exceptional circumstances necessary for appointment. *See Qian Zhao v. Holder*, 356 F. App'x 749, 753 (5th Cir. 2009) (citing *Ulmer v. Chancellor*, 691 F.2d 209, 212 (5th Cir. 1982)).  Finally, we deny Samba's motion for leave to file a late motion to reconsider our denial of his motion to stay his deportation as moot.