# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 1, 2021

Lyle W. Cayce
Clerk

No. 18-60459

Edgar Tibakweitira,

*Petitioner*,

*versus*

Robert M. Wilkinson, Acting U.S. Attorney General,

*Respondent*.

Petitions for Review of Orders of the
Board of Immigration Appeals
BIA No. A206 755 696

Before Haynes, Duncan, and Engelhardt, *Circuit Judges*.
Per Curiam:[*]

Edgar Tibakweitira, a native and citizen of Tanzania, petitions for review of an order issued by the Board of Immigration Appeals ("BIA") dismissing his appeal from the Immigration Judge's ("IJ") decision denying his application for withholding of removal and protection under the Convention Against Torture ("CAT"). He separately petitions for review of

---

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 18-60459

the BIA's order denying his motion to reconsider and reopen and denying his request for review of that motion by a three-member panel. We DISMISS IN PART and DENY IN PART the petitions for review.

## I.

Tibakweitira contends that after serving one year in the Tanzanian military, he was recruited to the Tanzania Intelligence and Security Service ("TISS"), where he allegedly received training to suppress political opponents of the Tanzanian government through violent means. Tibakweitira reportedly abandoned his TISS position and fled to the United States on a tourist visa on June 26, 1992. He overstayed his visa and remained in the United States, attending college and business school, settling in Washington, D.C., and establishing a real estate business that catered heavily to the local Tanzanian community. On June 10, 2013, he was indicted in the United States District Court of Maryland based on his participation in a mortgage fraud scheme. On March 31, 2015, he pleaded guilty to conspiracy to commit wire fraud and aggravated identity theft. He was sentenced to 57 months of imprisonment and ordered to pay nearly $2.5 million in restitution.

On June 30, 2017, the Department of Homeland Security issued Tibakweitira a removal order, finding that he was removable based on his commission of an aggravated felony (conspiracy to commit wire fraud) under 8 U.S.C. § 1227(a)(2)(A)(iii). Tibakweitira subsequently applied for withholding of removal and CAT protection. After a hearing, the IJ issued a written decision on December 22, 2017, denying his application and ordering his removal to Tanzania. Tibakweitira appealed to the BIA, which affirmed the IJ's decision and dismissed the appeal on June 7, 2018. Tibakweitira filed a motion with the BIA requesting reconsideration of the dismissal of his appeal, reopening of his removal proceedings, and review of his motion by a

2

three-member panel. A single BIA member denied the motion on September 6, 2018.

Tibakweitira timely petitioned for review of the BIA's dismissal of his appeal and its denial of his motion. He argues that (1) the IJ and BIA erred in finding that his conspiracy to commit wire fraud offense was a "particularly serious crime" rendering him statutorily ineligible for withholding of removal; (2) the IJ and BIA erred in denying CAT relief; (3) the BIA erred in denying his motion to reopen; (4) his due process rights and the Convention Against Transnational Organized Crime were violated by the IJ and/or through his removal order; (5) the BIA erred in denying review of his motion to reconsider and reopen by a three-member panel.

The Government counters that we lack jurisdiction to consider the "particularly serious crime" finding under 8 U.S.C. § 1252(a)(2)(C), substantial evidence supports the denial of CAT relief, and we lack jurisdiction to consider the due process and Convention Against Transnational Organized Crime claims because they are unexhausted.

## II.

We generally review only decisions of the BIA. *Zhu v. Gonzales*, 493 F.3d 588, 593 (5th Cir. 2007). However, when the IJ's ruling affects the BIA's decision, as it does here, we review the decisions of both the BIA and the IJ. *Id.* Factual findings are reviewed for substantial evidence, and constitutional claims and questions of law are reviewed de novo. *Fuentes-Pena v. Barr*, 917 F.3d 827, 829 (5th Cir. 2019). We review the BIA's denial of a motion to reopen under a highly deferential abuse-of-discretion standard. *Gomez-Palacios v. Holder*, 560 F.3d 354, 358 (5th Cir. 2009). Finally, we review de novo questions relating to our jurisdiction to consider challenges to a final order of the BIA. *Solorzano-Moreno v. Mukasey*, 296 F. App'x 391, 393 (5th Cir. 2008).

No. 18-60459

## III.

### A. No Jurisdiction over Factual Challenges to Removal Order

Tibakweitira challenges his final order of removal, contending that the IJ and BIA erred in finding that his conspiracy to commit wire fraud offense was a "particularly serious crime" rendering him statutorily ineligible for withholding of removal under 8 U.S.C. § 1158(b)(2)(A)(ii). Specifically, he argues that undue weight was given to the length of his sentence and the restitution amount, and insufficient weight was given to his extreme remorse, acceptance of responsibility, cooperation with the Government, the nonviolence of his offense, and his joint and several liability with codefendants for the restitution amount.

If an alien commits any crime specified in 8 U.S.C. § 1252(a)(2)(C), he may obtain judicial review of constitutional and legal challenges to the final order of removal, but not of factual challenges to the final order of removal. *Nasrallah v. Barr*, 140 S. Ct. 1683, 1687–88, 1691 & n.4 (2020) (citing 8 U.S.C. § 1252(a)(2)(C)–(D)). "Aggravated felonies" under 8 U.S.C. § 1227(a)(2)(A)(iii) are among the offenses specified in § 1252(a)(2)(C). Tibakweitira's conspiracy to commit wire fraud offense, for which he was ordered to pay nearly $2.5 million in restitution, is an aggravated felony because it was a "conspiracy to commit an offense" that "involve[d] fraud . . . in which the loss to the victim or victims exceed[ed] $10,000." 8 U.S.C. § 1101(a)(43)(M)(i) & (U).

Tibakweitira does not argue that the IJ and BIA employed an incorrect legal standard or violated his constitutional rights in finding his crime to be particularly serious. Instead, he contends that the IJ and BIA erred by giving weight to certain facts related to his crime and declining to give weight to other facts. His argument essentially asks us to reweigh the facts and find that his crime was not particularly serious, which we are without jurisdiction to

do. *Solorzano-Moreno*, 296 F. App'x at 394. Accordingly, Tibakweitira's petition for review of the "particularly serious crime" findings of the IJ and BIA is dismissed for lack of jurisdiction.

## B. CAT Relief

Tibakweitira contends that the IJ and BIA erred in finding that he did not meet his burden of proof for CAT relief based on his alleged TISS abandonment, testimony against codefendants during his criminal proceedings, and membership in Chadema, an opposition group to the Tanzanian government. Tibakweitira challenges the IJ's adverse credibility determination, affirmed by the BIA, asserting that his testimony was truthful and shows that he faces a probability of torture upon his return to Tanzania. He argues that the IJ failed to consider evidence in support of his CAT claim, including a photograph of himself in a military uniform, a letter from his sister regarding a visit she received from a Tanzanian law enforcement official, and a report of mass human rights violations in Tanzania.

"A CAT order is distinct from a final order of removal and does not affect the validity of a final order of removal." *Nasrallah*, 140 S. Ct. at 1694. Thus, § 1252(a)(2)(C)'s bar on judicial review of factual challenges to final removal orders does not prohibit our review of factual challenges to CAT orders. *Id.* at 1692. To obtain CAT relief, the petitioner bears the burden of showing that (1) it is more likely not that he will be tortured upon return to his homeland; and (2) sufficient state action will be involved in that torture. *Tamara-Gomez v. Gonzales*, 447 F.3d 343, 350–51 (5th Cir. 2006). "Torture" is defined as "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person . . . by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1).

No. 18-60459

In assessing the first step, consideration must be given to: (1) whether the petitioner has been tortured in the past; (2) whether the petitioner could relocate to another part of the country where torture would not be likely; (3) whether there are "gross, flagrant or mass violations of human rights within the country of removal;" and (4) "other relevant information regarding conditions in the country of removal." 8 C.F.R. § 1208.16(c)(3). Under the second step, a petitioner "may satisfy his burden of proving acquiescence by demonstrating a government's willful blindness of torturous activity." *Iruegas-Valdez v. Yates*, 846 F.3d 806, 812 (5th Cir. 2017) (citation omitted).

Despite Tibakweitira's reliance on the military photograph, he points to no evidence corroborating his allegations that TISS recruited him from the military or intended to harm him for abandoning his position. His sister's letter merely demonstrates that a Tanzanian law enforcement official asked her about his whereabouts. Tibakweitira testified that he was never physically harmed in Tanzania or the United States. He further testified to holding a prominent job as a Washington, D.C. realtor to the Tanzanian community, despite allegedly receiving threats from TISS members during this period—brazen public behavior that is inconsistent with someone seeking escape and who fears return to Tanzania. Although he testified that he was threatened by TISS members multiple times while living in the United States, he stated that no one from TISS contacted him after 2007, even though TISS was aware of his location. He argues that his former codefendants have ties to the Tanzanian government, however, he failed to present evidence that any of these individuals exert influence supporting a likelihood of torture by or with the acquiescence of public officials upon his return. He faults the IJ and BIA for failing to consider a 2016 State Department report, which he asserts proves widespread human rights abuse against Chadema members in Tanzania. However, this report does not indicate that any such abuses occurred.

For the foregoing reasons, substantial evidence supports the conclusion of the IJ and BIA that Tibakweitira failed to meet his burden of proof for CAT relief. *Tamara-Gomez*, 447 F.3d at 350–51. Tibakweitira's petition for review of the denial of CAT relief is therefore denied.

## C. Motion to Reopen

Tibakweitira argues that the BIA erred in denying his motion to reopen his removal proceedings for consideration of new evidence to corroborate his claim for CAT relief. Specifically, he contends that the BIA ignored a letter from his criminal defense attorney dated July 16, 2018, stating that Tibakweitira received threatening letters in prison regarding his cooperation with the Government during his criminal proceedings. He also argues that the BIA ignored a letter from a prison mail custodian dated February 2, 2018, explaining why a previously submitted copy of a threatening letter Tibakweitira received in prison—dismissed as not credible by the IJ for lack of an official prison stamp—was not logged as official prison mail. Finally, he cites an article published on August 1, 2017, which provides an overview of recent harassment and imprisonment of Tanzanian citizens for exercising free speech rights.

A motion to reopen must be based on "newly discovered evidence or a change in circumstances since the hearing." *Dada v. Mukasey*, 554 U.S. 1, 12 (2008) (citation omitted). The motion must be based on facts that are "material" and "could not have been discovered or presented at the former hearing." 8 C.F.R. § 1003.2(c)(1).

The BIA denied Tibakweitira's motion to reopen based on his failure to submit new evidence that was unavailable or undiscoverable at the time of his hearing. Tibakweitira does not explain why letters from his attorney and the prison mail custodian could not have been submitted at the time of his hearing. Even if this evidence had previously been undiscoverable, it would

No. 18-60459

not be material to his CAT claim because it fails to demonstrate likelihood of torture or that the senders of the alleged threatening letters had any influence over Tanzanian public officials. Similarly, the article is not material because it focuses on repression of free speech in Tanzania and provides no corroboration for his fear of torture by Tanzanian public officials.

For the foregoing reasons, the BIA did not abuse its discretion in finding that Tibakweitira did not present newly discovered evidence to corroborate his claim for CAT relief. *Gomez-Palacios*, 560 F.3d at 358; *Dada*, 554 U.S. at 12. Accordingly, his petition for review of the denial of his motion to reopen is denied.

## D. Failure to Exhaust

Tibakweitira argues that the IJ violated his due process rights by limiting his attorney's questioning during his hearing and mischaracterizing his evidence. He further asserts that his removal order constitutes a substantive due process violation because it amounts to a state-created danger, subjecting him to likelihood of harm upon his return to Tanzania despite the Government's promise to protect him in exchange for his cooperation against his codefendants. Finally, he contends that his removal order violates the Convention Against Transnational Organized Crime. He did not present any of these arguments to the BIA. He concedes that he failed to exhaust his claim under the Convention Against Transnational Organized Crime but urges that exhaustion would have been futile.

Judicial review of a final removal order is available only where the petitioner has exhausted all administrative remedies available as of right. 8 U.S.C. § 1252(d)(1). Because exhaustion in this context is statutorily mandated, a petitioner's failure to exhaust an issue before the BIA is a jurisdictional bar to our consideration of the issue. *Wang v. Ashcroft*, 260 F.3d 448, 452 (5th Cir. 2001). "A remedy is available as of right if (1) the petitioner

No. 18-60459

could have argued the claim before the BIA, and (2) the BIA has adequate mechanisms to address and remedy such a claim." *Omari v. Holder*, 562 F.3d 314, 318–19 (5th Cir. 2009). To exhaust administrative remedies, an issue must be raised in the first instance before the BIA, either on direct appeal, in a motion to reopen, or in a motion for reconsideration. *Id.* at 319–20; *Roy v. Ashcroft*, 389 F.3d 132, 137 (5th Cir. 2004). An exception to the exhaustion requirement exists for claims of due process violations, "except for procedural errors that are correctable by the BIA." *Roy*, 389 F.3d at 137. However, the petitioner may not escape the exhaustion requirement by couching the procedural error in terms of a due process violation. *Goonsuwan v. Ashcroft*, 252 F.3d 383, 389–90 (5th Cir. 2001); *Roy*, 389 F.3d at 137.

Tibakweitira's argument that exhaustion was not required for his claim under the Convention Against Transnational Crime because exhaustion would be futile is meritless. A claim must be explicitly raised before the BIA, and there is no valid futility argument where the petitioner had the opportunity to raise his claim and simply failed to do so. *See Omari*, 562 F.3d at 320–21. Similarly, his due process claims present issues correctable by the BIA and could have been raised either on direct appeal or in his motion to reopen and reconsider. *Id.* at 318–19; *Roy*, 389 F.3d at 137. Tibakweitira makes no argument to the contrary. *See Soadjede v. Ashcroft*, 324 F.3d 830, 833 (5th Cir. 2003) (issues not argued by petitioner seeking review of a BIA decision are deemed abandoned); *Yohey v. Collins*, 985 F.2d 222, 224–25 (5th Cir. 1993) (arguments not adequately briefed are waived).

Tibakweitira's failure to present these arguments to the BIA means that they are unexhausted, and we lack jurisdiction to consider them. *Wang*, 260 F.3d at 452. Accordingly, his petition for review of unexhausted claims is dismissed.

No. 18-60459

## E. Denial of Review by Three-Member Panel

The BIA denied Tibakweitira's request for three-member panel review of his motion to reopen and reconsider. Generally, all cases must be assigned to a single BIA member for review. 8 C.F.R. § 1003.1(e). "Cases *may* only be assigned for review by a three-member panel" under certain circumstances. 8 C.F.R. § 1003.1(e)(6)(i)–(vii) (emphasis added). Tibakweitira argues that his case merits three-member review because there is a "need to review a clearly erroneous factual determination by an immigration judge." 8 C.F.R. § 1003.1(e)(6)(v).

Under 8 C.F.R. § 1003.1(e)(5), the BIA member to whom a case is assigned "has the discretion to decide whether the case merits review by a three-member panel. Assignment to a three-member [panel] is not mandatory even if it meets the criteria under 8 C.F.R. § 1003.1(e)(6)." *Cantu-Delgadillo v. Holder*, 584 F.3d 682, 690–91 (5th Cir. 2009). "Because the decision to designate the case to be heard by a three-member panel is discretionary, this court lacks jurisdiction to review the BIA's decision." *Id.* at 691. Even if we had jurisdiction to review the BIA's decision, we find that there are no clearly erroneous factual determinations in the IJ's written decision to merit three-member review.

For these reasons, we dismiss for lack of jurisdiction Tibakweitira's petition for review of the BIA's non-referral of his motion to a three-member panel.

## IV.

For the foregoing reasons, Tibakweitira's petitions for review are DISMISSED for lack of jurisdiction as to his claims that (1) the IJ and BIA erred in finding that his conspiracy to commit wire fraud offense was a "particularly serious crime" rendering him ineligible for withholding of removal; (2) his due process rights and the Convention Against

No. 18-60459

Transnational Organized Crime were violated by the IJ and/or through his removal order; and (3) the BIA erred in denying three-member review of his motion to reconsider and reopen.

His petitions for review are DENIED as to his claims that (1) the IJ and BIA erred in denying CAT relief; and (2) the BIA erred in denying his motion to reopen.